### ULRICH v. THE TOLEDO CONSOLIDATED STREET RAILWAY COMPANY.

1. EVIDENCE NOT ADMISSIBLE.

   An ordinance limiting the rate of speed of street cars in running across the public bridges of a city is not admissible in evidence to show negligence in running at a greater rate of speed in approaching a bridge.

2. CHARGES TO JURY AS TO REASONABLE CARE.

   In an action brought by a passenger injured while riding with her husband, it is not error to charge that she should exercise reasonable care to learn of the danger and avoid injury.

ERROR to the court of common pleas of Lucas county.

KING, J.

The plaintiff was injured on the 15th day of June, 1893, while riding in a carriage with her husband on St. Clair street, in this city, near a bridge over what is called Swan creek cut-off, by a car belonging to the defendant company colliding with the carriage in which she was riding.

She was very severely and seriously injured, and brought an action against the street railroad company to recover damages for her injury, claiming that the street railroad company was negligent, particularly in running its car at a high and dangerous rate of speed, alleging also that there was an ordinance of the city of Toledo prescribing a rate faster than which cars should not run while crossing bridges in the city, excepting only the bridge over the Maumee river, known as the Cherry street bridge. There are also other allegations of negligence; that the motorman did not look out, didn't ring his gong or his bell, gave no warning of the approach of his car, and that the brake of his car was somewhat out of repair.

The defendant denied the allegations of negligence, as set forth in the amended petition filed by the plaintiff, and alleged that the plaintiff was guilty of contributory negligence. That was denied by the reply.

The trial in the court of common pleas resulted in a verdict in favor of the railroad company, and it is here sought to set aside the judgment rendered upon that verdict, for the reason that it is against the evidence and the law, because the court erred in ruling out certain evidence offered by the plaintiff below; because the court refused to give the requests asked by the plaintiff; and erred in the charge as given.

In the natural order of things, it seems proper to consider the exceptions to the refusal of the court to admit the evidence complained of. The injury to the plaintiff occurred on St. Clair street, at the south end of the bridge over what is called the Swan creek cut-off—either upon the south end of the bridge, or right at the entrance to the bridge from the roadway. The plaintiff and her husband were driving north on St. Clair street, on the east side of it, outside the railway tracks. Her husband owned the horse and carriage, which was a covered buggy, with the back curtain down and the side curtains up. The husband was driving. The plaintiff was riding with him. They drove down St. Clair street, which at this point descends towards the bridge, and descends about 10

feet in 250 or 300 feet from what is known as Clayton street, which comes into St. Clair from the east. They had come down Clayton street and turned onto St. Clair street, and went northerly, on the right hand side of it to some point near the bridge, and at that point their horse and buggy came upon the railroad track. Whether they attempted to cross it, or the horse became unmanageable and jumped upon the track and took the buggy with him, or just how the carriage came upon the track, is not certain; at any rate, they came upon the railroad track, and the car, going northerly, struck the rear end of the buggy, either upon the street just as it approached the bridge, or upon the south end of the bridge, and the buggy was thrown to the left hand side of the railway track and crushed, and the occupants were thrown out and injured. The city of Toledo enacted an ordinance providing that street cars should not run at a rate of speed greater than six miles an hour while crossing any of the bridges in the city of Toledo, excepting the Cherry street bridge. The plaintiff offered that ordinance in evidence to sustain the allegations of her petition that the defendant was negligent in running its cars at a high and dangerous rate of speed—it having offered evidence tending to show that the car was going down the hill at a high rate of speed and approaching the bridge at a rate of speed probably greater than six miles an hour. The ordinance was ruled out. The ground assigned by the court was, that it was immaterial. To this an exception was taken. This court is of opinion that the court of common pleas did not err in ruling out that ordinance, upon the ground upon which the court placed it. We will not undertake to enter into a discussion of the question whether that ordinance would have been competent under any circumstances to show negligence on the part of the railroad company. That question is somewhat in dispute, and the authorities do not agree. It is not necessary for us to determine what we would do in a case where that question was fairly presented. It is enough for us to say that the injury to the plaintiff was not caused by crossing this bridge at a rate of speed greater than six miles an hour. If the rate of speed of the railroad company was dangerous and negligent, and from that rate of speed the collision occurred, it was the rate of speed of the car coming down this hill and before it reached the bridge, that caused this injury. The evidence almost unanimously shows that the car struck this buggy right at the south end of the bridge, and when the car stopped, one of the witnesses says, it was its length upon the bridge, and three of the witnesses, with equal means of observation, say it was half its length on the bridge and the other half on the street. But whether it was a length or a length and a half or a half length on the bridge is not material, since it is clear it must have struck the buggy before it struck the bridge, and the force of the blow shoved the carriage along on the bridge against the side partition. The ordinance would be of no account, because the accident might just as well have happened 100 feet away from the bridge as where it did, the speed on the bridge having nothing to do with the collision of the car and the buggy. So we do not think the court erred in not allowing the ordinance to be admitted. It placed its refusal upon the very proper ground—that it was immaterial.

There were a number of requests submitted to the court, which the court was asked to give and refused, and there are a number of exceptions to portions of the charge as given. We do not find an error in the charge of the court, so far as its refusal to give these requests is concerned. They are in substance all embodied in the charge of the court,

which seems to be a very full and fair statement of the law. As to one point I will refer: It is claimed here that the court imposed by its direction to the jury a higher obligation of care upon the part of this plaintiff than the law authorized. The court said—and this is excepted to:

"As I have stated, it was her duty, while riding in the buggy upon the street, to use ordinary and reasonable care for her own safety. If she might have avoided the injury that she sustained by the use of what, under the circumstances, was ordinary and reasonable care, then she was guilty of contributory negligence, and cannot recover. Now, it is a question of fact which you must determine from a consideration of the evidence in the case, whether or not the plaintiff was guilty of contributory negligence. She was required to make reasonable use of her senses of sight and hearing to learn of the approach of a car, and generally, to do whatever, under the circumstances, an ordinarily prudent person would do. The question is for you to say from the evidence in the case, whether or not she did anything which she ought not to have done, or whether she omitted to do anything which ordinary prudence, under the circumstances, demanded of her. Her knowledge of the situation or her means of knowledge must be considered. Reasonable care was required of her to do whatever was necessary to avoid the injury— ordinary and reasonable care, and only ordinary and reasonable care. As she cannot recover if her own negligence contributed to the injury, it follows that if the negligence both of plaintiff and defendant contributed to directly cause the injury, the plaintiff cannot recover. This is but another statement of the rule in another form, that if the plaintiff contributed to the injury, she cannot recover, no matter if the defendant was negligent."

There could not be any objection to that part of the charge in an ordinary case of negligence, I take it. It is the rule which the law always imposes upon both parties and never relieves them of, fairly stated to the jury. Negligence is so much an inference from facts that it is always the duty of the court to leave that question to the jury, where it would be possible, at least for any other inference to be drawn; and the court may leave that question to the jury, even though it appear that no inference could be drawn except that of reasonable care, unless the court should be specially requested to direct the jury that there was no evidence of negligence. Then, of course, if such was the case beyond question, and if no inference could be drawn of negligence, it, I think, would be the duty of the court to direct the jury that there was no negligence. But such a request was not made to the court here, and it was a fair and reasonable proposition to say to the jury that the plaintiff must exercise ordinary care under all the circumstances. It could not follow from that kind of a charge that the jury would infer that the plaintiff was guilty of negligence. I think the amount of care which the plaintiff was called upon to exercise under these circumstances was very slight. She was not responsible in any respect for the negligence of her husband, the driver, and therefore she might ride with him without, perhaps, exercising any great degree of caution; yet it cannot be said that it was not her duty to use the senses which she had to ascertain that danger was near her. It may be if she had ascertained that danger was coming, she could not have avoided it. It may be that she could not jump from a buggy when it was drawn by a fractious horse. But the rule is, that the same

obligation rested upon her as upon her husband and upon all parties. We think the court gave the correct instruction to the jury.

What I have already said discloses the fact that the evidence here was not altogether clear, and the jury might draw an inference of defendant's negligence, or it might not. The testimony of several witnesses called for the plaintiff, and one of the defendant's witnesses, was to the effect that the plaintiff and her husband were driving down this hill entirely outside of the street car track. They were driving northerly. There was plenty of room between the street car track and the gutter, and so there was between the tracks and the north side of the bridge, the car tracks at that point converging towards the center of the bridge, leaving a driveway on the outside of the car tracks. If the horse and buggy had remained in that driveway, no injury could have happened; but it is very clear from the testimony of the plaintiff and her husband, and of those who saw the injury, that although the plaintiff's husband didn't hear the noise of the approaching car, the horse did hear it, and became at once excited and jumped up and down, and the clear weight of the testimony shows that he attempted to run across the track, either perhaps by being pulled in by her husband who was driving, or some other reason, and that he ran onto the track within from 50 to 75 feet of the approaching car, and when, as appears from his testimony, the motorman did not have the slightest intimation that this horse and carriage were going upon the track. There is no reason why he should have supposed that this horse and carriage driving along at a moderate trot, as the evidence shows, would suddenly turn from the track where there was a safe roadway and run upon the railroad track in front of this car. He says he did not suspect it, and there is no reason why he should have suspected it. The horse, as I say, became fractious, and the man who was driving the horse says he don't know what happened—he has no idea how it occurred; but in some manner they got upon the track; that is evident. It is also evident that the buggy must have crossed the larger portion of the track, for the car struck upon the right side at a sufficient angle to throw the buggy entirely to the left side of the track. The buggy must have been at least more than half way over the track, for it was hit upon the right wheel first, and then upon the right hand corner of the rear part of the top. In that way it was driven on the bridge and against the iron work that forms the center partition or center truss of the bridge, and ground to pieces. Under all the circumstances—the manner in which the plaintiff herself and her husband tell the story—it was all a question of fact, and it was for the jury to say whether the defendant was negligent under all the circumstances—whether its motorman ought to have anticipated this action of the horse and have stopped his car before there could have been a collision. All those questions were fairly submitted to the jury under the testimony, and the jury considered them, and found against the plaintiff.

We recognize the fact that this woman was severely injured, and so far as the evidence discloses, it does not occur to us that there was any negligence upon her part causing that injury; but there was an accident. The horse became frightened and unmanageable, dashed upon the street car track in front of the car, and the car collided with the buggy almost instantly—as one of the witnesses says, there was hardly an instant of time from the time when the buggy got upon the track until the car struck it. He says that as soon as the motorman saw that the buggy had turned he rang his gong and put on the brake of his car instantly.

That is stated by one of the plaintiff's witnesses who was a passenger in the car, and he observed this horse and buggy, and saw the horse jump. That was evidence which could not have been very favorable to the plaintiff, but it was evidence which the jury might well apply, and it came from a very reputable and creditable witness. I think we would hardly be justified in disturbing the verdict of the jury, and that the jury were well authorized in finding as they did find, that the company was not negligent, and that its negligence did not cause this injury.

The judgment will be affirmed.

*A. W. Eckert*, for Plaintiff in Error.

*Smith & Backer*, for Defendant in Error.